IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christine Michelle Wood, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:12-1757-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on September 17, 2013, recommending that the Commissioner's decision be affirmed. (Dkt. No. 25). Plaintiff filed objections to the Report and Recommendation and the Commissioner filed a reply. (Dkt. Nos. 27, 30). As more fully set forth below, the decision of the Commissioner is reversed and remanded for further action consistent with this order.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a

determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Further, even if a claimant's condition does not meet all of the requirements of a listing, a claimant may be declared disabled at Step Three if she is able to show that another impairment or combination of impairments are the medical equivalent of the listed impairment. 42 U.S.C. § 423(c)(2)(b); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); 20 C.F.R. § 404.1526(b).

If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating

-3-

physicians. *Id.* § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

## Factual Background

Plaintiff, who had a work history as a housekeeper, assistant store manager, and telemarketer, asserts that she is disabled from work as a result of a combination of various

medical impairments that include most prominently a history of chronic back and neck pain and severe migraine headaches. Plaintiff's back problems apparently worsened as a result of a work-related injury and she asserts they have progressively worsened over time. She was diagnosed with a disc bulge at L1-2 and L5-S1 in the late 1990s and she has been placed on a twenty-five-pound weight lift limit by a treating orthopaedist. Transcript of Record ("Tr.") at 233. She was diagnosed at the MUSC Orthopaedics Spine Surgery Center in December 2010 with "cervical and lumbar spine soft tissue diffuse syndrome." Tr. at 501-02. A disability examination conducted by an orthopaedist, Dr. David Robinson, for the Social Security Administration in October 2009 noted Plaintiff's prior MRI findings of disc bulge and "long history of mechanical low back pain" and found the twenty-five-pound weight limit reasonable. Tr. at 271-22. Dr. Robinson also thought that Plaintiff should avoid repetitive overhead lifting, climbing, and traveling to work over a long distance. Tr. at 272.

Plaintiff also reported a history of migraine headaches that date back to her adolescence. Tr. at 332, 497. She asserted that these migraines worsened in May 2010 and contributed significantly to her medical leave of absence from her job as a telemarketer to which she has never returned. Tr. at 44-45. When her migraines worsened in 2010, Dr. Suzann Weathers, her family physician, initially treated Plaintiff. Dr. Weathers documented that Plaintiff's migraines occurred a few times per week and lasted from five minutes to one hour. The migraines were aggravated by light and noise and relieved by the patient lying down and taking medication. Tr. at 329. When Dr. Weathers attempted to examine Plaintiff's head as part of her physical examination, she noted that the patient had "exquisite tenderness of the right temple to palpation" and "became nauseous and dizzy acutely." Tr. at 330. After seeing Plaintiff on a number

occasions for her migraines, Dr. Weathers diagnosed her with "migraine headache, uncontrolled." Tr. at 336.

Dr. Weathers referred Plaintiff to a neurologist, Dr. Ashok Patel, for evaluation of her migraines. Dr. Patel first saw Plaintiff on August 5, 2010, and ordered a significant work-up to determine the cause of Plaintiff's migraines. However, the diagnostic studies did not reveal an underlying cause for her migraines. Tr. at 493-99. By October 10, 2010, Dr. Patel documented that Plaintiff was experiencing "chronic daily headaches" and was treating her with a various medications. He informed her on that date that he was leaving his practice and she would need to find another neurologist to treat her. Tr. at 494.

According to Plaintiff's testimony at her administrative hearing, she thereafter saw two other neurologists, Dr. Ashley Kent and Dr. John Plyler. Tr. at 48-49. Plaintiff reported that she saw Dr. Kent only briefly because he also left his practice but that she was then actively being treated by Dr. Plyler. Tr. at 48. Indeed, she reported that she had last seen Dr. Plyler on June 30, 2011, just three weeks before the administrative hearing. Tr. at 48.

Plaintiff also testified that her migraines were "very severe" and she was sensitive to lights and noise. Tr. at 44, 45. When her condition worsened in May 2010, she found she was unable to work consistently and had to go on medical leave. She described Dr. Weather's palpation of her head during an initial physical exam as causing "excruciating pain." Tr. at 45. Plaintiff further testified that her migraines "had gotten to the point where . . . I literally have to go into a dark place so I can just block out most everything." Tr. at 46-47.

The hearing transcript reveals that the ALJ, after hearing Plaintiff's testimony of her worsening migraines since May 2010, indicated that she did not have a copy of any records since August 2010 and did not have Dr. Plyler's or Dr. Kent's treatment records. Tr. at 51. The ALJ asked Plaintiff's counsel to provide her any additional records within fifteen days of the hearing to substantiate this testimony. Tr. at 57, 61. This Court's careful review of the administrative record reveals no evidence of Dr. Kent's and Dr. Plyler's treatment records.[1]

The ALJ found that Plaintiff's chronic back and neck pain imposed certain limitations on her ability to function in the workplace and concluded that she had the capacity to perform only light work. Tr. at 15. The ALJ also imposed a variety of other limitations on lifting, stooping, crawling, use of foot controls, and climbing. *Id.* However, as to Plaintiff's migraine condition, the ALJ found Plaintiff was "not fully credible" regarding the effects of her condition. Tr. at 17. The ALJ observed that Plaintiff's doctors "have not determined the cause of her migraines and head pain" and noted that she was being treated for the condition by Dr. Plyler and had previously been treated by Dr. Patel and Dr. Kent. *Id.* What is not revealed in the ALJ's decision is that a credibility determination was made about the effects of Plaintiff's migraines without the fact-finder reviewing the treatment records of two of the claimant's treating physicians, including one who was actively treating her at the time of the administrative hearing.

---

[1] The last treatment record relating to Plaintiff's migraines involved a January 17, 2011 emergency room visit in which she presented with a headache and dizziness and was noted to have a history of "frequent poorly controlled chronic migraine headaches." Tr. at 510-11. Plaintiff was administered medications, her condition improved, and she was discharged. Tr. at 514.

A vocational expert testified at the administrative hearing that there were many jobs Plaintiff could perform with her physical limitations, including her former position as a telemarketer. Tr. at 60. On cross examination, the vocational expert indicated that if Plaintiff's medical condition required her to miss two to four days per month, there likely was not work in significant numbers in the national economy she could perform. The ALJ found that Plaintiff was qualified to return to her former position as a telemarketer and further found there were additional jobs in the national economy she could perform. Tr. at 19-21. Therefore, the ALJ found Plaintiff was not disabled under the Social Security Act.

## Discussion

Although Plaintiff presents with a complicated and involved medical history, the critical issue raised in her disability claim is quite straightforward: does she have an uncontrolled migraine condition that occurs multiple times each week and requires her to retreat to a darkened and quiet location to recover? To the extent that Plaintiff's testimony is credible, it is hard to imagine that she could possibly function in the work place. On the other hand, if her statements are not credible and reflect a significant exaggeration of her symptoms, the ALJ's decision denying the disability claim is likely supported by substantial evidence.

A claimant in a Social Security disability claim has the duty to furnish all relevant medical evidence and to carry the burden of proving that he or she is disabled. 20 C.F.R. § 404.1512(a). Congress, however, imposes upon the Commissioner to "make every reasonable effort" to obtain "all medical evidence, including diagnostic tests," from treating physicians. 42 U.S.C. § 423(d)(5)(B). This requires the ALJ to "develop a full and fair record" and to correct any significant gaps or "deficiencies" in the record. *Thompson v. Sullivan*, 933 F.2d 581, 585

(7th Cir. 1991); *Hannah-Walker v. Colvin*, No. 2:12-cv-61-PRC, 2013 WL 5320664, at *15 (N.D. Ind. Sept. 23, 2013); *Rivera v. Astrue*, No. 10 CV 4324(RJD), 2012 WL 3614323, at *12 (E.D.N.Y. Aug. 21, 2012); *Washington v. Astrue*, C/A No. 3:08-cv-2631-DCN, 2010 WL 3023048, at *3 (D.S.C. July 29, 2010). This affirmative duty exists where "such evidence is necessary to a fair determination of the claim." *Milton v. Schweiker*, 669 F.2d 554, 556 (8th Cir. 1982); *Tucker v. Bowen*, No. CV-87-3487, 1989 WL 10564 (E.D.N.Y. Feb. 2, 1989). While the ALJ's duty to complete the record is heightened when the claimant is *pro se*, the "duty exists even when the claimant is represented by counsel. *Rivera*, 2012 WL 3614323, at *12.

In this matter, the absent records of two of Plaintiff's treating neurologists potentially contain documentation of physical examinations, medical histories, diagnostic studies, and diagnoses relating to Plaintiff's migraine condition that may enhance her credibility or confirm the impression of the ALJ that the condition it is not as serious and disabling as the claimant contends. One of these specialized treaters, Dr. Plyler, reportedly saw Plaintiff weeks before the administrative hearing and his medical records could be particularly probative in evaluating the credibility of the claimant's testimony at the administrative hearing. The Court finds these absent records of Drs. Kent and Plyler to be necessary to develop a full and fair record and to make a fair determination of the claim. Therefore, the Court finds that there is good cause to remand the matter to the Commissioner to gather this additional evidence. *Hannah-Walker* at *15.

In making this determination, the Court is mindful that the ALJ requested Plaintiff's counsel to locate and submit to her the Kent and Plyler records within fifteen days of the close of the hearing, and it appears this did not happen. In normal adversarial litigation, that would have

been sufficient. But Social Security disability claims have their own distinct rules and standards and are supposed to be non-adversarial at the administrative level. Congress has imposed an affirmative duty on the Commissioner to fully develop the record and, as cited above, courts have remanded matters for further administrative action where a full and fair record has not been developed. The glaring omission of the specialized treating physicians' records on the critical issue in contest in this claim mandates remand to correct this deficiency.

The decision of the Commissioner is hereby REVERSED pursuant to Sentence Four of 42 U.S.C. § 405(g) and REMANDED to the Commissioner for further action consistent with this Order. The ALJ is directed to gather the records of Drs. Kent and Plyler relevant to this claim and to conduct *de novo* the Five Step review process based upon the full administrative record.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
October 25, 2013